IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JON T. McEWAN, | : | |
| | : | |
| Claimant | : | |
| | : | |
| v. | : | CASE NO. 3:10-CV-50-CDL-MSH |
| | : | Social Security Appeal |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Respondent. | : | |
| _____ | | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability benefits and Supplemental Security Income (SSI) finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d

1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The claimant bears the initial burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).  A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the

---

[1]    Credibility determinations are left to the Commissioner and not to the courts.  *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. § 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the claimant is working.  *Id.*  If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listing").  *Id.*  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

I.   Are the ALJ's RFC findings based on substantial evidence?

II.  Are the ALJ's findings at Step Five based on substantial evidence?

III. Did the ALJ properly consider Claimant's subjective complaints?

IV.  Did the Appeals Council err in failing to remand the case?

### Administrative Proceedings

Claimant protectively applied for a period of disability and disability insurance benefits on February 1, 2006, and for supplemental security income on February 17, 2006, alleging disability as of June 15, 2005. (Tr. 114-125, ECF No. 8.) Claimant's applications were denied initially and on reconsideration, and on April 23, 2007, Claimant timely requested a hearing before an ALJ. (Tr. 65-79.) Following the hearing, the ALJ issued an unfavorable decision on May 7, 2009. (Tr. 12-22.) The Appeals Council subsequently granted Claimant's Request for Review on March 16, 2010, but affirmed the ALJ's decision. (Tr. 1-7.) This appeal followed.

### Statement of Facts and Evidence

After consideration of the written evidence, the hearing testimony in this case, and additional evidence submitted to the Appeals Council, the Appeals Council "adopt[ed] the ALJ's findings or conclusions regarding whether the [C]laimant is disabled." (Tr. 4.) The Appeals Council determined that Claimant had not engaged in substantial gainful activity since June 15, 2005. (Tr. 5.) The Appeals Council also concluded that Claimant has the severe impairments of degenerative disc disease of the lumbar spine and chronic

low back pain with radiculopathy, but found that none of these impairments, either individually and or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 5.) The Appeals Council next found that Claimant had the residual functional capacity (RFC) to perform a reduced range of work at the light exertional level, with specific limitations. (Tr. 5-6.) The Appeals Council determined that Claimant was unable to perform any past relevant work, was a younger individual at the alleged onset date with a limited or "less" education. (Tr. 6.) The Appeals Council then found that transferability of job skills was not relevant based on claimant's age and RFC. (Tr. 6.) Considering the Claimant's age, education, work experience, and RFC, the Appeals Council found that jobs existed in significant numbers in the national economy that Claimant could perform. (Tr. 6.) Thus, the Appeals Council concluded that Claimant was not disabled at any time through the date of the ALJ's decision.

## DISCUSSION

**I.     Are the ALJ's RFC findings based on substantial evidence?**

Claimant asserts as his first error that there is not substantial evidence in the medical record to establish that he is capable of performing a reduced range of light work. Specifically, the Claimant contends that the ALJ's findings regarding RFC do not reflect the evidence in record. He further argues that there is "misplaced reliance" by the ALJ on opinions by non-examining, reviewing physicians (Pl.'s Mem. of Law 7, ECF

No. 13), and that the ALJ gave no consideration "at all" to the opinion of Claimant's treating physician, Dr. LeBlond. (Pl.'s Mem. 14.) These arguments are without merit.

The ALJ[2] thoroughly discussed and considered the record of treatment by Dr. LeBlond *by name* despite Claimant's assertion to the contrary. (Tr. 19-20.) In fact, the record shows that the ALJ considered the whole longitudinal record of treatment by Dr. LeBlond including records of treatment that predated the alleged onset of disability. As the ALJ correctly noted in his decision, the care given to Claimant by Dr. LeBlond was conservative in nature and involved no surgeries, recommendations of surgery or any hospitalizations throughout the seven year treatment period. The conservative treatment measures were continued by Dr. LeBlond after both the car accident of June 15, 2005 and the fall from the bar stool at K-Mart in October 2006. (Tr. 18-20.) Indeed, by September 2008, the Claimant's condition was stable with medication, exercise and physical therapy and stable at the last documented clinical presentation of January 2009 with the use of TENS unit and facet blocks to alleviate pain. The ALJ found that despite Claimant's complaint of back pain, he continued to perform activities of daily living unassisted and has the functional ability to perform light work. The ALJ then specifically considered the Claimant's treatment history with Dr. LeBlond in conjunction with the opinions of two state agency medical consultants, Drs. Collier and Bettinger, and made a finding that the determinations by the state agency physicians that Claimant is capable of work at the

---

[2] Although the Appeals Council decision is the Commissioner's final decision in this case, the Court discusses the ALJ's decision and reasoning because the Appeals Council adopted the ALJ's findings and conclusions regarding whether the Claimant is disabled.

light exertional level was consistent with and supported by the medical record considered as a whole.  Contrary to Claimant's argument that the ALJ "ignored the opinion of the . . . treating physician[,]" the record makes it abundantly clear that the ALJ carefully weighed the evidence in Dr. LeBlond's records and considered them as a part of the record as a whole.  (Pl.'s Mem. at 15.)

Claimant's records of treatment by Dr. LeBlond are in the record as Exhibits 3-F covering the period from December 27, 2002 until January 13, 2006 (Tr. 193-226); 5-F covering the period from May 10, 2006 until September 6, 2006 (Tr. 235-39); and 7-F covering the period from September 20, 2006 until February 3, 2009 (Tr. 248-75). Although no additional clinical presentations or examinations are referenced beyond those contained in these exhibits, there is also the affidavit noted above submitted to the Appeals Council given by Dr. LeBlond.  A careful review of each of the three exhibits shows a marked consistency of conservative care given to Claimant with recommendations for heat application, therapy and exercise.  As late as January 6, 2009, Dr. LeBlond's treatment plan consisted of "continue heat, home exercise and current medications" with a recommended follow-up in three months.  (Tr. 252.)  This treatment plan is identical to the one given by Dr. LeBlond after the September 9, 2008, examination but with a one to two month follow-up "if needed."  (Tr. 255.)  Three months earlier at the June 3, 2008, examination the treatment was likewise virtually identical with a specific recommendation that Claimant incorporate "regular walking" along with heat and medication as needed.  The same is true of the plan specified on March 4, 2008

(Tr. 261) and earlier on November 6, 2007.  (Tr. 265.)  In sum, although a TENS unit was used and facet blocks applied occasionally, the consistent and unvarying plan for Claimant's treatment by his treating physician, Dr. Robert LeBlond was conservative in nature and included repeat recommendations for exercise.

Despite the ALJ's thorough evaluation of Claimant's treatment by Dr. LeBlond, Claimant contends that the ALJ erred by not specifically addressing Dr. LeBlond's medical opinion. (Pl.'s Mem. 14.)  Specifically, Claimant states that Dr. LeBlond gave a medical opinion on December 2, 2005, which indicates that Dr. LeBlond considered Claimant unable to work.  (Pl.'s Mem. 14; Tr. 222.)  The Regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2); *see* SSR 96-5p.  An ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner; this includes any physician's opinion which states that he finds the claimant disabled or that the claimant's impairments meet or equal any relevant listing. 20 C.F.R. §§ 416.927(e)(1), (2) & (3); SSR 96-5p.  Determinations of disability or RFC "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 416.927(e);

*see* SSR 96-5p.

To the extent that the letter Dr. LeBlond provided Claimant on December 2, 2005, could be considered a medical opinion,[3] it speaks to the final issue in this case, which is reserved solely for determination by the Commissioner. 20 C.F.R. §§ 416.927(e)(1), (2) & (3); SSR 96-5p. As such, the ALJ did not have to consider this opinion or give it any special weight. Therefore, Claimant's first enumeration of error is without merit.

## II. Are the ALJ's findings at Step Five based on substantial evidence?

Claimant's second asserted error is that the ALJ's determination at Step Five is not based on substantial evidence. Specifically, Claimant contends the ALJ erred when he posed a hypothetical question to the independent VE which was not supported by substantial evidence in the record. Claimant further contends that the resulting VE testimony, upon which the ALJ relied, is therefore likewise unsupported by substantial evidence. He also claims that included in this error is a failure to recognize and explain an alleged inconsistency between the Dictionary of Occupational Titles (referred to

---

[3] The "opinion" Claimant contends was not considered by the ALJ is a letter provided to Claimant by his treating physician. This letter states in full:

> I have been treating Mr. Jon McEwan for several years for low back pain. His back pain was stable and under control until he was involved in a motor vehicle accident in June of 2005. He was working up to that point. Since then he has had a marked increase in pain and has had difficulty returning to work. It is my opinion that the back pain he is now suffering and out of work for is not preexisting and his disability policy should be in effect for this. I would appreciate it if you would reconsider these issues.

(Tr. 222.) While Dr. LeBlond is clearly expressing an opinion regarding whether Claimant's pain was preexisting and whether he should be provided disability insurance, this letter does not truly speak to the issue of whether Claimant should be given disability benefits or SSI.

9

herein as "DOT") and the VE testimony regarding jobs which the ALJ found at Step Five that Claimant could perform within his RFC.  Claimant argues that there is an inconsistency and such inconsistency is unexplained in contravention of SSR 00-4p.  The Commissioner responds that no conflict exists in the record between the DOT and the VE's testimony and that SSR 00-4p was fully complied with when the ALJ asked the VE whether her testimony was consistent with the DOT.  Further, the Commissioner states that the hypothetical question posed to the VE by the ALJ fairly set forth the Claimant's limitations and included the option, though not a requirement, to occasionally walk.

Claimant testified at the hearing before the ALJ that he was capable of sitting and standing throughout an eight hour workday, provided he could alternate between the two, and further testified he could also walk for "a couple of hours[.]"  (Tr. 48.)  Claimant also admitted he could lift ten pounds frequently.  (Tr. 48.)  It was from this testimony by the Claimant, as well as other evidence in the record, that the ALJ posed his hypothetical question to the VE and to which Claimant's counsel neither objected nor sought to further develop other than to establish *by his examination of the VE* that all three of the available jobs put forth by the Commissioner at Step Five included or did not prohibit sit/stand options. (Tr. 59.)

A review of the record shows clearly that the ALJ's hypothetical question to the VE is based on substantial evidence including the Claimant's own testimony at the hearing as to his capabilities. (*See, e.g.,* Tr. 48-50 (Claimant discussing sitting, lifting, and walking).)   The Claimant argues that an inconsistency was created within the

hypothetical by the inclusion of the "walk" option.  However, the need for Claimant to have an option to keep comfortable while working by walking or sitting or standing as the need may arise does not constitute an inconsistency between the VE testimony and the DOT.  Claimant apparently concedes as much in his brief by stating that the DOT neither requires nor prohibits the sit/stand option in jobs identified by the VE, but is simply silent as to either sit/stand or sit/stand/walk options or requirements of work.

No inconsistency exists which requires explanation under SSR 00-4p.  The record demonstrates clearly that the possibility of inconsistencies was called to the attention of the VE by the ALJ and the VE testified that her testimony was consistent with the DOT and its associated rules and regulations.  (Tr. 58.)  This was all that was required by the ALJ in order to comply with SSR 00-4p.  *See* SSR 00-4p, 20000 WL 1898704 (Dec. 4, 2000) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.")  Because there was no "apparent conflict" between the VE's testimony and the DOT, the ALJ was not required under SSR 00-4p to elicit a "reasonable explanation" from the VE as to the supposed conflict.  Furthermore, this Court has held that:

> The question is whether remand is warranted when the conflict between the VE's testimony and the DOT is not identified during the hearing or in the ALJ's decision. The testimony of the vocational expert was unchallenged, as plaintiff was represented by counsel at the hearing and the VE was subject to cross examination. Courts that have considered this issue have refused to remand such cases. In short, the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT.

*Massey v. Astrue,* 2008 WL 623196 (M.D. Ga. 2008) (citations omitted). Claimant's counsel also elicited testimony from the VE that each of the three jobs identified by her, which Claimant could perform with his limitations, would offer a sit/stand option. Claimant's contention that the testimony of the VE is "not reliable" (Pl.'s Mem. 17) is without merit and fails to establish that there is an unexplained conflict between the DOT and the VE's testimony. Claimant's second enumeration of error is therefore likewise without merit.

### III. Did the ALJ properly consider Claimant's subjective complaints?

In his third asserted error, Claimant argues that the ALJ failed to properly consider Claimant's subjective complaints of disabling pain and failed to provide a "sufficiently detailed" (Pl.'s Mem. 17-24) rationale in his decision for rejecting Claimant's pain complaints. 20 C.F.R. § 416.929(a), in relevant part, states that:

> Statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

Moreover, as explained above, the mere existence of impairments does not establish disability; instead, the ALJ must determine how a claimant's impairments limit his or her ability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

> Regarding credibility, Social Security Regulation 96-7p explains:
>
> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

The Eleventh Circuit has held that in order for a claimant's subjectively alleged pain to be deemed credible by the ALJ, he or she must *first* show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ must "clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). (quotations and citations omitted). While "[t]he credibility determination does not need to cite particular phrases or formulations," it must sufficiently indicate that the ALJ considered the claimant's medical condition as a whole. *Id*.

The ALJ met the above explained requirements and has provided explicit and adequate reasons for discrediting Claimant's pain allegations, and further the ALJ's decision clearly shows that the ALJ considered the Claimant's medical condition as a

whole.  The ALJ found that Claimant has a medically determinable impairment which can reasonably be expected to cause the symptoms of which Claimant complains, but found that Claimant's statements regarding the intensity, persistence and limiting effects of the symptoms were not fully credible.  (Tr. 18-20.)  In making this determination, the ALJ exhaustively reviewed the Claimant's treatment history with Dr. LeBlond, the Claimant's pain management physician, including the longitudinal record prior to the alleged date of onset of disability.  (Tr. 19.)  The defining characteristic of Dr. LeBlond's treatment of Claimant is its conservative nature over a significant time frame and stated improvement by Claimant at several clinical visits.  (Tr. 19-20.)  The ALJ ultimately concluded:

> Having thoroughly considered the entire evidence of record, I find that the claimant's subjective complaints and alleged limitations are not fully persuasive to the extent alleged.  The record fails to demonstrate that his medical impairments were so severe that they required the type of medical attention normally required of a claimant suffering with disabling related medical impairments.  In particular, he has not required unexpected, frequent emergency room visits, hospitalizations and/or outpatient treatments during the relevant period of adjudication.

(Tr. 20.)

Despite Dr LeBlond's wholly conclusory affidavit as to the specifics of Claimant's asserted limitations beyond those found to exist by the ALJ in the RFC assessment, there is no evidence from which it can be reasonably found that Claimant suffers from crippling and disabling pain.  At the hearing Claimant conceded he could sit/stand and walk in combination to sufficiently alleviate his asserted pain in order to work an 8 hour

day. (Tr. 43, 47-48.) The Claimant's credibility is a question of fact for the ALJ to decide and where, as here, there is substantial evidence to support the determination the ALJ makes as to credibility the decision must be upheld.

### IV. Did the Appeals Council err in failing to remand the case?

In his fourth and final enumerated error, Claimant contends the Appeals Council failed to review and remand his case in light of new and material evidence in the form of an affidavit from his treating physician, Dr. LeBlond opining that Claimant lacked the ability to perform any work as a result of pain, inability to concentrate and likelihood of missing excessive days from work. (Pl.'s Mem. 24; Tr. 277-79.) The record however, as noted by the Commissioner in his brief (Mem. in Supp. of Comm'r's Decision 18), clearly establishes that the Appeals Council in fact granted Claimant's request for review (Tr.4-5) and adequately considered the evidence in the record as a whole including the affidavit by Dr. LeBlond submitted after the hearing before the ALJ.[4] The affidavit in question is conclusory and contains no date from which it can be inferred that any new examination, evaluation, test or other diagnostic measure was performed by Dr. LeBlond such that the lengthy longitudinal record of conservative care marked by

---

[4] The Appeals Council explained:

> The claimant's attorney submitted an affidavit from treating physician, Dr. Robert LeBlond. In the affidavit, Dr. LeBlond opines exertional and non exertional work limitations that would restrict the claimant to less than full range of sedentary work. Dr. LeBlond's opinions have been considered, however, they are not supported by clinical evidence and do not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 4.)

15

recommendations for therapy and exercise and considered by both the ALJ and the AC should be revisited or changed. Claimant's final enumeration of error is without merit.

## CONCLUSION

WHEREFORE, it is the recommendation to the United States District Judge that the decision of the Commissioner be AFFIRMED. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this the 7th day of July, 2011.

S/ Stephen Hyles
UNTED STATES MAGISTRATE JUDGE